# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| ASHLEY THOMAS, | : | Case No. 3:17-cv-238 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

## I. Introduction

Plaintiff Ashley Thomas applied for period of disability, Disability Insurance Benefits, and Supplemental Security Income on January 23, 2014. She asserted that she has been under a benefits-qualifying disability since December 16, 2013. Administrative Law Judge (ALJ) Elizabeth A. Motta concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

Plaintiff challenges the ALJ's non-disability decision in the present case. The parties "agree that this case was improperly decided by the [ALJ]" and that a remand to the Social Security Administration is warranted. (Doc. #12, *PageID* #1336). They disagree, however, on whether the remand should be for an award of benefits in Plaintiff's favor or whether further administrative proceedings are needed. The case is before the Court upon the Commissioner's Motion to Remand (Doc. #12), Plaintiff's

Response (Doc. #13), Commissioner's Reply (Doc. #14), Plaintiff's Statement of Errors (Doc. #9), and the administrative record (Doc. #6).

## II. Standard of Review

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). "Generally, benefits may be awarded immediately 'only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011) (quoting, in part, *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). A judicial award of benefits is proper "only where the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming." *Id.* (citing *Faucher,* 17 F.3d at 176; *Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985)).

## III. Discussion

The Commissioner seeks remand of this case for further administrative proceedings and a new decision. According to the Commissioner, "Upon remand, the Commissioner will instruct the Appeals Council to vacate all findings in the Administrative Law Judge's decision. The Commissioner will then conduct further

2

proceedings, offer Plaintiff a supplemental hearing and develop the administrative record as necessary to determine whether Plaintiff is disabled within the meaning of the Social Security Act, and then issue a new decision." (Doc. #12, *PageID* #1336).

Plaintiff disagrees. She asserts that her impairments meet or equal Listing 12.05B and/or 12.05C (Intellectual Disability).

To meet the listing for intellectual disability,[1] an individual's impairment must satisfy the diagnostic description in the introductory paragraph and any of the four sets of criteria. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A. Listing 12.05 provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]…

20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. Thus, a plaintiff seeking to establish an intellectual disability under Listing 12.05B must prove two elements: (1) an IQ score of

---

[1] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." *See* 78 F. Reg. 46,499, 46,501 (to be codified at 20 C.F.R. § 404, Subpt. P, App. 1). The Administration stated that the change "does not affect the actual medical definition of the disorder or available programs or services." *Id.* at 46,500. Thus, the amendment does not effect a substantive change, and the words "mental retardation" and "intellectual disability" have the same meaning and are sometimes used interchangeably.

3

59 or less; and (2) subaverage general intellectual functioning with deficits in adaptive functioning that began before age 22. *Id.* And, under Listing 12.05C, a plaintiff must prove three elements: (1) an IQ score between 60 and 70; (2) a second impairment causing work-related limitations; and (3) subaverage general intellectual functioning with deficits in adaptive functioning that began before age 22. *Id.*

*IQ Score*

The Regulations require a plaintiff to show "a valid verbal, performance, or full scale IQ of 59 or less" for Listing 12.05B or of 60 through 70 for Listing 12.05C. 20 C.F.R. § 404, Subpt. P, App. 1, §§ 12.05B, C. These IQ scores "reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series." *Id.* § 12.00(D)(6)(c).

In 2005—when Plaintiff was 18 years old—a school psychologist, Ken Leibrock, administered the Wechsler Adult Intelligence Scale – Third Edition (WAIS-III). (Doc. #7, *PageID* #479). Plaintiff obtained a full scale IQ of 58, performance score of 59, and verbal score of 62. *Id.*

In June 2014, Dr. Giovanni Bonds evaluated Plaintiff, and with the assistance of Margaret K. Glaser, M.A., Psychology Assistant, administered the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) and Wechsler Memory Scale – Fourth Edition (WMS-IV). *Id.* at 820-32. Plaintiff obtained a full scale IQ score of 46. *Id.* at 825. Plaintiff also scored between 50 and 56 on the Verbal Comprehension Index, Perceptual Reasoning Index, Working Memory Index, and Processing Speed Index. *Id.*

"In cases[—such as the present one—]where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Social Security Administration] use[s] the lowest of these in conjunction with 12.05." *Id.* § 12.00(D)(6)(c).

But, there is more to IQ scores than just the number: "The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." *Id.* § 12.00(D)(6)(a).

ALJ Motta concluded that Plaintiff's IQ scores were insufficient:

> [T]he IQ scores obtained during both school evaluation and much later testing by Dr Bonds cannot be considered valid. Those scores are inconsistent with [Plaintiff's] adaptive functional level. As to the school records, the school psychologist noted that they were likely an underestimate of [Plaintiff's] true intellect. Likewise, Dr Bonds noted [Plaintiff's] depressed IQ scores, but indicated that her adaptive level was significantly higher and diagnosed borderline intellect. As to that diagnosis, Dr Bonds' opinion is entitled to great weight.… The State Agency reviewers also found borderline intellectual functioning, suggesting they too find adaptive deficits to be lacking to support intellectual disability.

(Doc. #7, *PageID* #83).

Both the Commissioner and the ALJ assert that Plaintiff's IQ scores are not valid and she therefore does not meet the Listing because she was diagnosed with borderline

5

intellectual functioning, not intellectual disability. *Id.* at 82-83; (Doc. #14, *PageID* #1346). But, Listing 12.05 does not require a diagnosis of "intellectual disability." As the Commissioner is usually quick to point out—and is correct as a matter of law to do so—a mere diagnosis does not establish that a claimant is under a "disability." *See, e.g., Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986); *see also* 20 C.F.R. § 416.927(e)(1); *cf. Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *King v. Barnhart*, No. 1:06-cv-0381, 2007 WL 968746, at *5 (S.D. Ind. 2007) ("The Commissioner cites to *Foster v. Halter* ... to argue that a claimant must meet a formal diagnosis of mental retardation. *Foster* did not say that…."). Requiring such a diagnosis in cases of intellectual disability would place formalism over substantive evidence, especially where the plain language of Listing 12.05 does not specifically require a claimant to produce evidence from a medical source diagnosing intellectual disability. Thus, instead of requiring evidence of a diagnosis, the correct analysis focuses on whether the evidence of record meets or equals Listing 12.05's introductory paragraph and Listing 12.05B or C's criteria. *See Foster* 279 F.3d at 354; *Breitenstein v. Astrue*, No. 3:10cv32, 2011 WL 1234902 (S.D. Ohio Mar. 30, 2011) (Rice, D.J.).

Both Dr. Leibrock and Dr. Bonds commented on the validity of the tests and their consistency with Plaintiff's developmental history and degree of functional limitation. Dr. Leibrock noted that Plaintiff "was cooperative and did everything asked of her during the testing session. … [S]he could not be described as very enthusiastic, although this may have been her typical demeanor. She typically answered or otherwise responded to

6

tasks rather quickly, without much apparent careful mental consideration. These scores must be interpreted with some degree of caution and may be a somewhat of a low estimate of her ability." *Id*. Nonetheless, he also observed that her "scores are consistent with the results of proficiency testing, with her teacher's estimates of her academic skills. They are also consistent with the results of her STAR diagnostic assessment …." *Id.* at 481. He noted, "To date [Plaintiff] has not passed any sections of the 9th Grade Proficiency tests over several testings. Her scores have fallen substantially short of the requirement for passing." *Id*. at 477. On the STAR math assessment, Plaintiff attained a score of 3.6 grade level, and on the STAR reading assessment, she attained a score of 2.6 grade level. *Id*. These scores stand in stark contrast to her actual grade level; based on her age, Plaintiff "would be considered to be in the 12th grade." *Id*. On the Woodcock Johnson Tests of Achievement – III, Plaintiff's basic reading skills and reading comprehension scores were below the first percentile ("<.1" and ".2," respectively), and her spelling scores were in the first percentile. *Id.* at 480. Her math calculation score was in the eleventh percentile and her applied problems score was in the third percentile. *Id*. "These scores would indicate that [Plaintiff] would have a great deal of difficulty, compared to her age peers, processing verbal and non-verbal information." *Id.* at 484.

Likewise, Dr. Bonds opined, "Chances are 95 out of 100 that upon subsequent administrations of this test [Plaintiff] would validly obtain a Full Scale IQ between 43 and 51." *Id.* On the WMS-IV, Plaintiff obtained an Auditory Memory Index of 40, a Visual Memory Index of 46, a Visual Working Memory Index of 40, an Immediate Memory Index of 41, and a Delayed Memory Index of 42—all of which are in the

7

extremely low range. *Id.* at 826. Dr. Bonds noted that although Plaintiff's current IQ scores are significantly lower than her scores from 2005, all of the scores are in the extremely low range. *Id.* at 828. Further, the "decline in her cognitive abilities may be the result of the head injury that she sustained." *Id.*

Listing 12.05B requires an IQ score of 59 or less. Plaintiff's Full Scale IQ scores of 58 and 46 clearly fall into that range. Indeed, most of Plaintiff's scores fall into that range. However, in the alternative, Listing 12.05C requires an IQ score between 60 and 70. Plaintiff's Verbal score of 62 clearly falls into that range.

*General Intellectual and Adaptive Functioning*

The introductory paragraph of Listing 12.05 requires that the individual show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. "Deficits in adaptive functioning … refer to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 37 (5th ed. 2013). Additionally, "The American Psychiatric Association defines adaptive-skills limitations as concurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 677 (6th Cir. 2009) (citation and internal quotation marks omitted).

There is significant overlap between these areas of functional limitations and adaptive functioning. Indeed, under the Regulations, activities of daily living "include *adaptive* activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Listing 12.00C(1) (emphasis added). "*Social functioning* refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00C(2). And, "*Concentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00C(3).

The ALJ recognized that Plaintiff has a moderate limitation in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Doc. #7, *PageID* #s 81-82). The record-reviewing psychologists, Dr. Tishler and Dr. Demuth, also agreed Plaintiff had moderate limitations in the three functional areas. *Id.* at 183, 210. These limitations show Plaintiff's deficits in adaptive functioning.

Plaintiff's school records document significant deficits in her functional academic skills manifested before she reached age 22. In 8th grade, for instance, Plaintiff received mostly Cs, a few Bs, Ds, and Fs. *Id.* at 441. In 9th grade, she failed most of her classes. *Id.* She then transferred to Mound Street Military Academy. *Id.* at 429. Although her

attendance was "better than the average student …," her teacher indicated that she was "earning credits very slowly in academic subjects … due to problems with reading, math, and written expression skills …." *Id.* at 477. More specifically, Plaintiff's "overall reading skills are weak relative to her age peers and estimates her fluent reading skills at about a 2nd to 3rd grade level." *Id.* at 477. In math, she was "rated as average in computation using addition but weak in the other three operations. She is weak in reading and understanding word problems. She is rated as average in her understanding of time and money, but weak in measurement." *Id.* at 478.

Additionally, her school records reveal adaptive behavior deficits—"mainly in the area of communication skills." *Id.* at 484. Her deficit "may contribute to the times when [Plaintiff] has had altercations with other students." *Id.* Specifically, she "had three altercations with other students in which she became very angry, as indicated by 'blowing up', i.e. crying, breathing hard, and shaking." *Id.* at 482.

Plaintiff's teacher observed that she had several deficits in communication skills: "She does not speak in complete sentences, seems to avoid speaking situations, has difficulty comprehending in large group discussions, and has difficulty carrying out oral instructions." *Id.* at 478. However, she has "good articulation skills, and no issues with fluency or voice, or listening when interest level is high, speaking with the teacher individually, or in small groups." *Id.* at 478.

She continues to struggle with communication skills. In 2012, Plaintiff reported to Dr. Halmi that she has one friend, they do not do anything together, and she generally does not like to be around people. *Id.* at 660. More recently, Dr. Bonds noted that

Plaintiff reported difficulties controlling her temper and easily becoming angry. *Id.* at 829. Dr. Bonds opined, "Her difficulties with memory[,] comprehension[,] and reasoning are likely to contribute to the difficulties that she has sometimes in relating to other people and being able to problem solve situations that occur." *Id.* at 829.

Together, this evidence shows Plaintiff's significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period as Listing 12.05C requires.

<u>*Additional and Significant Work-Related Limitation of Function*</u>

Plaintiff has also shown that she has other impairments that impose an additional and significant work-related limitation of function. The ALJ found that in addition to Plaintiff's borderline intellectual functioning, her severe impairments included cervical fracture with residuals of fusion surgery and mood disorder. (Doc. #7, *PageID* #76).

These findings demonstrate that Plaintiff satisfies Listing 12.05C's requirement of an "additional and significant work-related limitation of function." The Regulations explain, "For paragraph [12.05]C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.,* is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(A). Consequently, the ALJ's determination at Step 2 that Plaintiff had several "severe" impairments under § 404.1520(c) effectively determined that these impairments imposed "additional and significant work-related limitation of function" in satisfaction of Listing 12.05C. *See Douglas v. Astrue,* 341 F. App'x 257 (8th Cir. 2009) (citing and explaining

11

parenthetically *Maresh v. Barnhart,* 438 F.39 897, 900-01 (8th Cir. 2006) ("'moderate' mental limitations in areas of functioning constituted more than slight or minimal effect on claimant's ability to work, and thus claimant met Listing 12.05C and was entitled to benefits ….")).

IV. **Remand**

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is

lacking." *Felisky*, 35 F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

In the present case, the evidence of record establishes that a remand for award of benefits is warranted because the record contains overwhelming evidence, or strong evidence while contrary evidence is lacking, that Plaintiff met the criteria of Listing 12.05B and C. But, the question of when her benefits begin remains. Plaintiff applied for period of disability, Disability Insurance Benefits, and Supplemental Security Income on January 23, 2014, alleging disability beginning December 16, 2013. The evidence shows her disability began December 16, 2013. Therefore, Plaintiff became eligible for Disability Insurance Benefits on December 16, 2013, and became eligible for Supplemental Security Income on the day she filed her application, January 23, 2014. However, Plaintiff's earnings met the threshold for substantial gainful activity between April 1, 2015 and September 30, 2015. (Doc. #7, *PageID* #s 75, 353); *see* 20 C.F.R. §§ 404.1571-74. Accordingly, she is not eligible for benefits during that period.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding be reversed and this case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for payment of benefits; and

2. The case be terminated on the docket of this Court.

April 30, 2018  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge